# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN C. VALLES, | : | |
|     Plaintiff | : | |
| | : | No. 1:18-cv-1967 |
|     v. | : | |
| | : | (Judge Rambo) |
| WARDEN DAVID J. | : | |
| EBBERT, *et al.*, | : | |
|     Defendants | : | |

## MEMORANDUM

### I.    BACKGROUND

This case was initiated by the filing of a complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in Civil Action No. 18-716 by *pro se* Plaintiffs Camden Barlow, Christopher Alvarez, Justin Haynes, Darryl Taylor, Tabarus Holland, Terrell Wilson, Tony C. Knott, Agustin Argueta, Douglas Piggee, and Nathan A. Railey, all of whom were incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg") at that time. (Doc. No. 1.) In that complaint, Plaintiffs alleged that Defendants had violated their rights under the Equal Protection Clause of the Fourteenth Amendment, their First Amendment rights to access the courts, and their First Amendment rights regarding mail. Subsequently, Doreteo Garcia, Juan Carlos Valles ("Valles"), and David Jackson were added as Plaintiffs. *Barlow v. Ebbert*, Civ. A. No. 17-716 (M.D. Pa.) (Doc. No. 28). On July 24, 2018, the Court dismissed

Plaintiffs' Equal Protection claim and their access to the courts claim and directed service of their First Amendment enhanced mail restriction claim. *Id.* (Doc. Nos. 38, 39). On October 10, 2018, the Court granted Plaintiff Railey's motion to sever and directed that each individual Plaintiff file an amended complaint under a separate civil action number by November 9, 2018. *Id.* (Doc. Nos. 89, 90).

Valles did not file an amended complaint by that date. Accordingly, by Order entered on December 4, 2018, the Court directed Defendants to respond to the remaining First Amendment claim. (Doc. No. 8.) The Court subsequently received an amended complaint from Valles. (Doc. No. 9.) Defendants filed a motion to dismiss (Doc. No. 10), which the Court granted by Memorandum and Order entered on April 4, 2019 (Doc. Nos. 13, 14). The Court granted Valles leave to file a second amended complaint within thirty (30) days. (Doc. No. 14.)

On April 30, 2019, Valles filed his second amended complaint, again naming Warden David J. Ebbert ("Ebbert"), SIS Officer Buebendorf ("Buebendorf"), and Officer/Counselor Tharp ("Tharp") as Defendants. (Doc. No. 15.) Valles alleges that Defendants violated his First Amendment rights by mishandling his mail and either destroying or not forwarding 30-50 incoming and outgoing personal letters. (*Id.* at 1-2.) Valles further suggests that Defendants' actions violated his rights under

the Eighth and Fourteenth Amendments. (*Id.*) He seeks declaratory relief as well as damages. (*Id.* at 2-3.)

After receiving an extension of time to respond to the second amended complaint (Doc. Nos. 16, 17), Defendants filed a motion to dismiss and/or motion for summary judgment on June 13, 2019 (Doc. No. 18) and filed their supporting materials on June 27, 2019 (Doc. Nos. 19, 20). Valles did not file a brief in opposition to Defendants' motion within the twenty-one (21) day period provided for by Local Rule 7.6. Subsequently, in an Order entered on July 25, 2019, the Court noted that Defendants' motion asserts, *inter alia*, that Valles failed to properly exhaust his administrative remedies before filing this action. (Doc. No. 21.) Pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court informed the parties that it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder. (*Id.*) Accordingly, the Court directed Defendants to, within fourteen (14) days, file an amended or supplemental brief and statement of material facts "to further address the issue of whether Plaintiff has exhausted his administrative remedies and present any additional materials pertinent to the issue to the extent they have not already done so." (*Id.*) The Court directed Valles to file a brief in opposition within twenty-one (21) days from the date that Defendants filed their

amended or supplemental materials.  (*Id.*)  The Court directed Valles to "specifically address the issue of administrative exhaustion and submit materials and documents pertinent to the issue."  (*Id.*)  The Court also directed him to "file a statement of material facts specifically responding to the numbered paragraphs in Defendants' statements."  (*Id.*)

On July 26, 2019, Defendants filed a letter regarding the Court's July 25, 2019 Order.  (Doc. No. 22.)  In this letter, Defendants state that they "have reviewed their brief in support of their motion to dismiss and/or motion for summary judgment and their statement of facts previously filed."  (*Id.*)  They "believe they have fully stated and supported their position on the exhaustion issue in those documents."  (*Id.*)  Accordingly, "Defendants will not avail themselves of the opportunity to file a supplemental memorandum and statement of material facts but will instead rely on the papers previously filed."  (*Id.*)

In light of Defendants' letter and decision to not file supplemental materials regarding the issue of exhaustion, there will be no supplemental materials to which Valles can respond.  Moreover, to date, Valles has neither filed a response to Defendants' brief in support nor a motion for an extension of time to do so.  Accordingly, the motion to dismiss and/or motion for summary judgment is ripe for resolution.

## II. STANDARD OF REVIEW

Defendants have filed a motion to dismiss and/or motion for summary judgment, arguing that: (1) Valles failed to exhaust his administrative remedies; and (2) they are entitled to qualified immunity. (Doc. No. 20.)

### A. Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The Third Circuit has held that filing a motion to dismiss, or in the alternative, a motion for

summary judgment is sufficient "to place the parties on notice that summary judgment might be entered." *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson*, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. *Anderson*, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001); *White v. Westinghouse Elec, Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party then has

the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." *U.S. Bank, Nat'l Ass'n v. Greenfield*, No. 1:12-cv-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

## III. STATEMENT OF MATERIAL FACTS[1]

Valles was previously incarcerated at USP Lewisburg. (Doc. No. 19 ¶ 9.) While incarcerated there, he was assigned to the Special Management Unit ("SMU") from November 13, 2017 through September 2, 2018. (*Id.*)

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. No. 19.) Valles failed to file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)). The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

### A. Facts Regarding Valles' Claims

As an SIS technician, Defendant Buebendorf "conducts investigations of the commission of prohibited acts by BOP inmates including . . . assaults, introduction of contraband or narcotics, possession of money or currency, and communicating gang affiliation and/or participating in gang activities." (*Id.* ¶ 39.) He also "handl[es] and process[es] mail in accordance with any applicable monitoring requirements or restrictions." (*Id.* ¶ 40.) He performs these duties for an "assigned caseload of inmates." (*Id.* ¶ 41.) Valles was never assigned to Defendant Buebendorf's caseload, and Defenadnt Buebendorf "did not oversee or conduct any investigations of alleged or suspected prohibited acts committed by Valles or perform associated searches of his records, cell, or property." (*Id.* ¶¶ 42-43.)

### B. Facts Regarding Exhaustion

The BOP "has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment." (*Id.* ¶ 11.) First, an inmate must present his complaint to staff "on an Informal Resolution Attempt form commonly referred to as a BP-8." (*Id.* ¶ 12.) If informal resolution is not successful, the inmate may then submit a Request for Administrative Remedy (BP-9) to the Warden. (*Id.* ¶ 13.) "The deadline for completion of the BP-8 and submission of the BP-9 is twenty days from the date of the event which is the subject of the

remedy." (*Id.* ¶ 14.)  The Warden has twenty (20) days to respond to the BP-9.  (*Id.* ¶ 15.)  If an inmate is unsatisfied with the Warden's response, he may file a Regional Administrative Remedy Appeal (BP-10) with the Regional Director within twenty (20) days from the date of the Warden's response.  (*Id.* ¶ 16.)  The Regional Director has thirty (30) days to respond.  (*Id.* ¶ 17.)  Finally, an inmate may appeal the Regional Director's response by filing a Central Office Administrative Remedy Appeal (BP-11) with the Central Office within thirty (30) days of the Regional Director's response.  (*Id.* ¶ 18.)  The Central Office has forty (40) days to respond. (*Id.* ¶ 19.)  The Central Office appeal is the final appeal, and no appeal is fully exhausted "until it is decided on its merits by the BOP's Central Office."  (*Id.* ¶¶ 20-21.)  An administrative remedy may be rejected at any level if it was not properly or timely submitted.  (*Id.* ¶ 22.)  If rejected, the remedy is "returned to the inmate and the inmate is provided with a written notice explaining the reason for rejection." (*Id.*)  A rejection of a remedy is not a decision on the merits.  (*Id.* ¶ 24.)

Each administrative remedy is given an identification number upon submission. (*Id.* ¶ 25.)  The number is then followed by a letter to indicate "the level at which that particular remedy was filed."  (*Id.* ¶ 26.)  "F" refers to the institution level; "R" refers to the Regional Director; and "A" refers to the Central Office.  (*Id.* ¶¶ 27-29.)

The BOP maintains a computerized index of all remedies and appeals filed by all inmates. (*Id.* ¶ 31.) An "Administrative Remedy Generalized Retrieval provide[s] details concerning each remedy filed by the inmates including the administrative remedy ID number, the date the remedy was received, an abstract (description) of the issue(s) raised, the three-letter code of the facility where the event occurred, the date the remedy was responded to, the status code, and the status reason." (*Id.* ¶ 32.) During his incarceration at USP Lewisburg, Valles filed four ($) administrative remedies; however, "[n]one of the administrative remedies filed by Valles pertained to the subject matter of the Second Amended Complaint." (*Id.* ¶¶ 34-35.)

## IV. DISCUSSION

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. *Id.* Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"); *Perazzo v. Fisher*, No. 11-1505, 2012 WL 1964419, at *1 (M.D. Pa. May 31, 2012) (dismissing case for failure to exhaust administrative remedies where plaintiff indicated in the complaint that the grievance process was not complete but was at

the "last stage"); *Jones v. Lorady*, No. 11-666, 2011 WL 2461982, at *3-4 (M.D. Pa. June 17, 2011) (dismissing prisoner complaint for failure to exhaust administrative remedies prior to initiating federal action). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise)

it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *Id.* at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269.

Failure to exhaust is an affirmative defense that must be pled by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" *Foster v. Morris*, 208 F.

16

App'x 174, 179 (3d Cir. 2006) (quoting *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Id.* (quoting *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

Defendants contend that Valles failed to exhaust his administrative remedies with respect to the claims asserted in his second amended complaint. In support, Defendants have submitted an affidavit from E. Frymoyer, an Attorney Advisor at USP Lewisburg, and Valles' Administrative Remedy Generalized Retrieval. (Doc. No. 19-1, Ex. 2.) These exhibits indicate that while Valles filed four (4) administrative remedies while incarcerated at USP Lewisburg, none of them pertained to the claims he raises in his second amended complaint. Consequently, because the undisputed record reflects that Valles failed to exhaust his administrative remedies regarding his First Amendment claim, and because Valles has not "come forth with 'affirmative evidence, beyond the allegations of the pleadings,'" that refutes the defense that he has failed to properly exhaust this claim, *see U.S. Bank, Nat. Ass'n v. Greenfield*, Civ. No. 12-2125, 2014 WL 3908127, at *2 (M.D. Pa. Aug.

11, 2014) (quoting *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)), summary judgment will be entered in favor of Defendants.[2]

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and/or motion for summary judgment. (Doc. No. 18.) An appropriate Order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: July 31, 2019

---

[2] Given the Court's conclusion that Valles did not exhaust his administrative remedies, the Court declines to address Defendants' alternate argument that they are entitled to qualified immunity.